NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KIM NEUSS and ANTONIO NEUSS, individually and on behalf of all others similarly situated,

        Plaintiffs,

        v.

RUBI ROSE, LLC, et al.,

        Defendants.

Civil Action No. 16-2339 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants Rubi Rose, LLC, doing business as Dapple Baby ("Dapple"), and Ruby Ventures, Inc.'s ("Ruby Ventures") (collectively, "Defendants") motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (ECF No. 17-1.) Plaintiffs Kim Neuss and Antonio Neuss (collectively, "Plaintiffs") filed opposition and a cross-motion for leave to amend (ECF No. 23), and Defendants replied (ECF No. 24). Defendants also moved to strike the nationwide class allegations pursuant to Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure. (ECF No. 18-5.) Plaintiffs filed opposition (ECF No. 22) and Defendants replied (ECF No. 25). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss, denies Defendants' motion to strike, and grants Plaintiffs' cross-motion for leave to amend.

## I.  **Background**[1]

Plaintiffs filed this consumer fraud class action against Defendants, alleging that Defendants falsely represented that Dapple's specialty cleaning products (the "products") "are 'natural' when, in fact, the products contain synthetic,[2] highly processed and/or non-natural ingredients." (Am. Compl. ¶¶ 1, 9, ECF No. 7.) On or about August 2015, Plaintiffs were shopping on Amazon.com for a natural dish soap suitable for cleaning their baby's bottles and dishware. (*Id.* ¶ 57.) While shopping, Plaintiffs reviewed Dapple's Refill Pack Baby Bottle and Dish Liquid, Fragrance-Free (the "Purchased Product"[3] or "Refill Pack Baby Bottle and Dish Liquid"), 34 fluid ounces, and viewed the label. (*Id.*) On or about August 17, 2015 and August 25, 2015, Plaintiffs purchased a Refill Pack Baby Bottle and Dish Liquid, which is manufactured by Dapple, from Amazon.com. (*Id.* ¶ 9.) Based on the representations on the labels, Plaintiffs understood that the purchased product was "natural." (*Id.* ¶ 57.) Specifically, "Plaintiffs purchased the product because

---

[1] For the purpose of this motion, the Court accepts the facts alleged in the Amended Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief"). The allegations included in this section are taken directly from Plaintiffs' Amended Complaint.

[2] In their Amended Complaint, Plaintiffs allege that the thirteen Dapple products contained "synthetic, highly processed and/or non-natural ingredients." (*See, e.g.,* Am. Compl. ¶¶ 1, 9, 18, 53.) Throughout this Memorandum Opinion, the Court restates Plaintiffs' allegations. The Court's use of the referenced terms, however, are not demonstrative of any particular legal determination as to the definition of those terms.

[3] The Court notes that Plaintiffs allege that they purchased the Refill Pack Baby Bottle and Dish Liquid on two separate occasions. (Am. Compl. ¶ 57.) Because the Refill Pack Baby Bottle and Dish Liquid is the only Dapple product that Plaintiffs purchased out of the thirteen Dapple products referenced in the Amended Complaint, the Court will refer to the Refill Pack Baby Bottle and Dish Liquid as the "Purchased Product."

they believed it was a natural product, made exclusively from plants, and/or free of SLS[4]/ SLES[.]" (*Id.* ¶ 9.) Plaintiffs allege that they "would not have purchased Dapple's [Refill Pack Baby Bottle and Dish Liquid] had they known that it was not natural and/or SLS/SLES-free." (*Id.*)

Dapple developed a line of "natural" products. (*Id.* ¶ 16.) Dapple manufactures, markets, and sells, *inter alia*, thirteen individual household cleaners and personal care products. (*Id.* ¶ 17.) The following products contain multiple synthetic and/or highly processed ingredients: (a) all-purpose cleaner spray; (b) all-purpose cleaner wipes; (c) dish liquid, fragrance-free; (d) dish liquid, lavender; (e) dishwasher pods, fragrance-free; (f) fragrance-free baby laundry detergent; (g) nursery cleaner spray; (h) pacifier wipes; (i) stain remover spray; (j) toy and high chair cleaner spray; (k) tub and tile cleaner spray; (l) baby laundry detergent pods; and (m) baby laundry booster pods. (*Id.* ¶ 19(a)-(m).) Dapple sells its products through brick-and-mortar and online retail stores. (*Id.* ¶ 20.) Plaintiffs alleged that the product labels target consumers looking to purchase baby-safe cleaning products. (*Id.* ¶ 21.) Each of the thirteen products states that it is "natural" or "naturally clean" on its front label, without any qualification. (*Id.* ¶ 22.)

The marketing-related information on Dapple's website also states that the products are "natural" quality. (*Id.* ¶ 23.) Upon information and belief, the glycerin contained in the products is manufactured through chemical processing. (*Id.* ¶ 39.) Dapple's products do not contain only natural ingredients. (*Id.* ¶ 51.) Dapple labels and markets its products as "natural" despite the inclusion of synthetic and highly processed substances. (*Id.* ¶ 52.) Plaintiffs, along with other reasonable consumers, purchased the products based on their belief that the products were

---

[4] The Amended Complaint defines "SLS" as sodium lauryl sulfate. (Am. Compl. ¶ 45.) The Amended Complaint does not provide a definition for the meaning of "SLES-free."

"natural." (*Id.* ¶ 53.) Dapple's claims that the products are "natural" are false and misleading, and Dapple has profited from its false and misleading marketing tactics. (*Id.* ¶¶ 54, 55.)

Plaintiffs purchased the Refill Pack Baby Bottle and Dish Liquid on two occasions for approximately $13.35 per unit. (*Id.* ¶ 57.) After using the Purchased Product, Plaintiffs determined that the Purchased Product was neither natural, made from plants, nor SLS/SLES-free. (*Id.* ¶ 58.) Plaintiffs have suffered an ascertainable loss in either the amount of the purchase price or the premium Plaintiffs paid for the Purchased Product. (*Id.* ¶ 59.)

Dapple is a limited liability company organized under the laws of New York with headquarters in Long Island City, New York. (*Id.* ¶ 10.) Ruby Ventures is an investment company with its principal place of business in New York. (*Id.* ¶ 11.) Dapple is a subsidiary, and thereby an agent, of Ruby Ventures. (*Id.*) Plaintiffs allege that Ruby Ventures was involved in the creation of Dapple's deceptive labeling, which is the subject of the suit. (*Id.*) Ilan Rubinstein ("Mr. Rubinstein"), Principal of Ruby Ventures and husband of Dapple's co-founder, is actively involved in the management of Ruby Ventures and Dapple, and was personally involved in modifications to the Dapple product labels. (*Id.*) Ruby Ventures' website perpetuates the alleged fraud by stating: (a) "Dapple's specially formulated cleaning products are baby-safe and baby-specific, using natural ingredients"; and (2) "Designing natural, baby[-]safe cleaning products[.]" (*Id.* ¶ 11(a)-(b).)

Plaintiffs' claims are based on the Purchased Product's labels.[5] (*Id.* ¶ 57.) Plaintiffs' Amended Complaint alleges nine claims on behalf of a proposed class against Dapple and Ruby Ventures, asserting claims for: (1) violation of Magnuson-Moss Warranty Act ("MMWA") (Count One), 15 U.S.C. § 2301 (*id.* ¶¶ 71-78); (2) violation of the New Jersey Consumer Fraud Act

---

[5] Plaintiffs also assert claims based on twelve other Dapple products that they did not purchase.

("NJCFA") (Count Two), N.J.S.A. 56:8-1, 8-2 (*id.* ¶¶ 79-96); (3) breach of express warranty in violation of state warranty statutes from fifty states and the District of Columbia (Count Three) (*id.* ¶¶ 97-104); (4) breach of implied warranty (Count Four) (*id.* ¶¶ 105-10); (5) unjust enrichment (Count Five) (*id.* ¶¶ 111-21); (6) common law fraud (Count Six) (*id.* ¶¶ 122-30); (7) negligent misrepresentation (Count Seven) (*id.* ¶¶ 131-39); (8) injunctive relief (Count Eight) (*id.* ¶¶ 140-45); and (9) declaratory relief (Count Nine) (*id.* ¶¶ 146-52). Plaintiffs bring this action on behalf of themselves and a proposed class consisting of: "All persons who purchased the products within the United States. Excluded from the Class are Defendants' officers, directors and employees." (*Id.* ¶ 60.)

## II.   Legal Standard

### A.   Standard of Dismissal under Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 n.4 (3d Cir. 2011) (citation omitted). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891.

## B.    Standard of Dismissal under Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.    Discussion

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1.    Ruby Ventures as a Party

Plaintiffs seek to hold Ruby Ventures vicariously liable for Dapple's conduct. (Am. Compl. ¶ 11.) Defendants argue that "Ruby Ventures must be dismissed from this action because the Amended Complaint does not allege a legally sufficient basis for permitting the corporate veil to be pierced." (Defs.' Moving Br. 1, ECF No. 17-1.) "[T]o state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show that: '(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law.'" *Bd. of Tr. of Teamsters Local 863 Pension v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002) (citing *Craig v. Lake Asbestos of Quebec*, 843 F.2d 145, 149 (3d Cir. 1988)). The relevant factors in a court's inquiry, with respect to piercing the corporate veil, include:

> gross undercapitalization . . . "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

*Id.* at 172 (quoting *Craig*, 843 F.2d at 150). It is well-established that "mere ownership [, however,] of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001); *see also Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 508 (D.N.J. 2009).

Plaintiffs offer four allegations in support of their claim that Ruby Ventures should be vicariously liable for Dapple's conduct. First, Plaintiffs allege that Ruby Ventures "dominates over Dapple's management and day-to-day operations[,]" and "was intimately involved in the creation

of Dapple's deceptive labeling[.]" (Am. Compl. ¶ 11.) Second, Plaintiffs allege that "Dapple and Ruby Ventures are so intertwined" because the Principal of Ruby Ventures and Co-Founder of Dapple are husband and wife. (*Id.*) Third, Plaintiffs allege that Mr. Rubenstein "is actively involved in the management of both Ruby Ventures and Dapple and was personally involved in changes made to the Dapple [p]roduct labels[.]" (*Id.*) Finally, Plaintiffs allege that "Ruby Ventures['] website perpetuates the frauds alleged in this [Amended] Complaint[.]" (*Id.*)

Here, the Court finds that Plaintiffs fail to allege that Ruby Ventures used Dapple "to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Foodtown, Inc.*, 296 F.3d at 172. The Amended Complaint lacks adequate allegations to state a claim that Ruby Ventures engaged in the type of activity ordinarily associated with piercing of the corporate veil. *Compare id.* (concluding that allegations were sufficient to meet the first prong of the veil-piercing test where the complaint alleged that a corporation and its alleged alter ego: "failed to maintain formal barriers between the management structures"; "commingled funds and other assets"; "failed to observe other corporate formalities"; and "shared twelve of thirteen common directors"), *with Premier Pork LLC v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *7 (D.N.J. Mar. 17, 2008) (finding that allegations that one corporation was a subsidiary of another, that both corporations shared the same chief financial officer, and that one corporation had a controlling interest in the other to be insufficient to pierce the corporate veil). As "mere ownership of a subsidiary does not justify the imposition of liability on a parent,"[6] the Court finds that Plaintiffs fail to allege sufficient facts to state a plausible claim for piercing the corporate veil under New Jersey law. Accordingly, the Court dismisses all Counts against Ruby Ventures without prejudice.

---

[6] *Pearson*, 247 F.3d at 484 (citation omitted).

2. <u>Standing on Unpurchased Products</u>

In addition to the Purchased Product, the Amended Complaint also contains allegations related to twelve other Dapple products. (*See* Am. Compl. ¶ 19.) Because Plaintiffs did not purchase the twelve products, Defendants assert that all claims pertaining to the unpurchased products should be dismissed for lack of standing. (Defs.' Moving Br. 1-2, 8-10.) Specifically, Defendants assert that Plaintiffs list and "allege that the different ingredients contained in the various products are not 'natural' for a multitude of reasons that are *unique to each ingredient*." (*Id.* at 1-3.)

There are three basic requirements to establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (internal citations omitted). "In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005). "[S]tanding [, however,] cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.'" *Id.* (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)). Accordingly, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). In *Haas v. Pittsburgh National Bank*, the Third Circuit held that

although a named-plaintiff lacked standing to pursue a particular claim, the named-plaintiff could assert the claim in a putative class action because the named-plaintiff had standing to pursue two closely related claims against the same defendant. 526 F.2d 1083, 1088-89 (3d Cir. 1975); *see also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.").

Courts in this district are divided on this issue. Where a class plaintiff brings a claim for a product within a line of products, some courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase. *See Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015); *Liberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011); *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011). Other courts, following *Haas*, have refused to dismiss claims for products that the named plaintiffs did not buy themselves. *See Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *14-16 (D.N.J. June 26, 2012); *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2014 WL 5092920, at *6-8 (D.N.J. Oct. 10, 2014); *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, No. 12-3571, 2013 WL 6450701, at *4-6 (D.N.J. Dec. 9, 2013). The *Gerber* court explained that it was following the approach taken by *Haas* and *Stewart*: "First, [the] [p]laintiffs sufficiently allege that the basis for the claims is the same . . . [;] [s]econd, the Court finds that the products are closely related . . . [; and] [f]inally, the Defendants are the same due to both products being manufacturer by Gerber." *In re Gerber*, 2014 WL 5092920, at *6.

Here, the Court finds that dismissal on standing grounds is premature. Although the Plaintiffs did not purchase the other twelve Dapple products, the three considerations outlined in *Gerber* are present. First, Plaintiffs allege that the basis for each defect claim is the same across all thirteen products—purporting to be natural or free of SLS/SLES. Second, because the inclusion of synthetic ingredients that contravene the natural or free-of-SLS/SLES representation is common between all thirteen products manufactured by Dapple, the products are closely related for the purposes of the Amended Complaint. Regardless of the specific variation of "non-natural" ingredients, Plaintiffs allege that Dapple included synthetic ingredients in their products and were aware of the defects in and misrepresentations about the products' ingredients. Finally, Plaintiffs' claims all target the two Defendants: Dapple and Ruby Ventures. Under these circumstances, the Court declines to dismiss Plaintiffs' claims as they relate to the products that Plaintiffs have not purchased. Accordingly, the Court defers the standing inquiry until the class certification stage. *See Cox*, 2015 WL 5771400, at \*15; *In re L'Oreal Wrinkle Cream Mktg. & Sales*, 2013 WL 6450701, at \*4.

## B.    Motion to Dismiss for Failure to State a Claim

### 1.    <u>Violation of the Magnuson-Moss Warranty Act ("MMWA") (Count One)</u>

Count One of the Amended Complaint alleges a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. (Am. Compl ¶¶ 71-78.) The MMWA provides, in relevant part: "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA defines "written warranty" as:

> any written affirmation of fact or written promise made in
> connection with the sale of a consumer product by a supplier to a

> buyer which relates to the nature of the material or workmanship
> and affirms or promises that such material or workmanship is defect
> free . . . which written affirmation, promise or undertaking becomes
> part of the basis of the bargain between a supplier and a buyer for
> purposes other than resale of such product.

15 U.S.C. § 2301(6)(A). Further, an "implied warranty" is defined as "an implied warranty arising

under [s]tate law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C.

§ 2301(7). As such, claims under the MMWA "stand or fall with [the claimant's] express and

implied warranty claims under state law." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017,

1022 (9th Cir. 2008); *see also Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *4

(D.N.J. Apr. 7, 2011) (explaining that a MMWA claim is "derivative of Plaintiffs' state law claim

of breach of implied warranty"). Because Plaintiffs fail to state claims for breach of express

warranty or breach of implied warranty of merchantability, as explained below, Plaintiffs'

accompanying MMWA claim does not survive. Accordingly, the Court dismisses Count One

without prejudice.

2.    Violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Two)

Count Two of the Amended Complaint alleges that Defendants violated the New Jersey

Consumer Fraud Act, N.J.S.A. 56:8-1, 8-2. (Am. Compl. ¶¶ 79-96.) To state a claim under the

NJCFA, a plaintiff must allege three elements: (1) the defendant's unlawful practice, (2) the

plaintiff's ascertainable loss, and (3) a causal relationship between the two. *Int'l Union of

Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (internal

quotation marks omitted). The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing concealment, suppression, or
> omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.][7]

N.J.S.A. 56:8-2.

When alleging fraud, Federal Rule of Civil Procedure 9(b) applies. Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Furthermore, a breach of warranty is not considered an unlawful practice per se under the NJCFA. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Rather, to state a valid NJCFA claim, a plaintiff must allege "substantial aggravating circumstances," *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997), and demonstrate that the defendant's conduct "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer," *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995).

Here, the Court finds that Plaintiffs fail to plead a valid NJCFA claim. Plaintiffs allege that Defendants "engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices." (Am. Compl. ¶¶ 86-87.) Plaintiffs also allege that "Defendants failed to disclose facts regarding the [p]roducts[.]" (*Id.* ¶ 88.) These allegations, without more, simply do not "inject precision" into the fraud claim to the extent required by Rule 9(b)'s heightened pleading standard. As such, Plaintiffs have not adequately pled an NJCFA claim. Accordingly, the Court dismisses Count Two without prejudice.

---

[7] Merchandise is a broad term that includes "goods," "commodities," and "services of anything offered." N.J.S.A. 56:8-(c). Here, the products in question are covered by the NJCFA.

### 3. Breach of Express Warranty (Count Three)

Count Three of the Amended Complaint alleges a claim for breach of express warranty. (Am. Compl. ¶¶ 97-104.) To state a valid claim for breach of an express warranty under New Jersey law, a plaintiff must allege: "(1) that [the] [d]efendant made an affirmation, promise or description [of] the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (internal citations omitted); *see also In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 175 (3d Cir. 2014). In addition, a plaintiff needs to allege proximate cause and damages. *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *14 (D.N.J. June 29, 2015). The plaintiff, however, need not be in privity with the defendant in order to state a valid claim. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 322 (D.N.J. 2014).

Here, Plaintiffs allege that—after reviewing the representations on the Purchased Product's labels and related information on Dapple's website—they purchased the Product based on their belief that the Product was "natural." (*See* Am. Compl. ¶¶ 51-53, 56-57.) Plaintiffs, however, also allege that the Purchased Product's labels included a list of synthetic ingredients followed by parenthetical explanations. (*See id.* ¶¶ 19, 25-36.) Based on the allegations pled in the Amended Complaint, it is unclear to the Court whether Plaintiffs allege that Dapple made representations that the Purchased Product was "natural" and void of synthetic. *See Snyder*, 792 F. Supp. 2d at 721. The Court, therefore, concludes that Plaintiffs fail to allege a claim for breach of an express warranty under New Jersey law. Accordingly, the Court dismisses Count Three without prejudice.

4. <u>Breach of Implied Warranty of Merchantability (Count Four)</u>

Count Four of the Amended Complaint alleges a claim for breach of the implied warranty of merchantability. (Am. Compl. ¶¶ 105-10.) Under New Jersey law, a plaintiff does not need to be in privity with the defendant to maintain an action for breach of implied warranty. *Dzielak*, 26 F. Supp. 3d at 327 (holding that New Jersey law does not require privity for breach of implied warranty). "Pursuant to the implied warranty of merchantability, a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 WL 4126264, at *19 (D.N.J. Sept. 3, 2008) (citing N.J.S.A. 12A:2-314). Merchantable goods must, therefore, in pertinent part: "(c) [be] fit for the ordinary purposes for which such goods are used; . . . and (f) conform to the promises or affirmations of fact made on the container or label if any." N.J.S.A. 12A:2-314(2)(c), (f).

Here, Plaintiffs allege that the products were not "natural and were thus [un]fit for the ordinary purpose for which they were sold."[8] (*See* Am. Compl. ¶¶ 18, 22, 106-07.) Plaintiffs,

---

[8] The Amended Complaint only alleges that Defendants violated the implied warranty of merchantability without specifically citing to a particular statute or subsection of a statute. The Amended Complaint states that the "[p]roducts are not fit for the ordinary purpose for which they were advertised." (*See* Am. Compl. ¶¶ 106, 107.) Based on the allegations in the Amended Complaint, the Court presumes that Plaintiffs bring their claim pursuant to N.J.S.A. 12A:2-314(2). The parties, however, argue different subsections of the statute in their briefs. (*See* Defs.' Moving Br. 11-12 (arguing that pursuant to N.J.S.A. 12A:2-314(2)(c), Plaintiffs are required to make a showing regarding the product's functionality, not the advertisement that allegedly induced Plaintiffs to purchase the product); Pls.' Opp'n Br. 11-13 (arguing that "Dapple [p]roducts . . . did not conform to the promises and affirmations thereon" in violation of N.J.S.A. 12A:2-314(2)(f)).) In their opposition brief, Plaintiffs argue that the "Dapple [p]roducts . . . did not conform to the promises and affirmations." (Pls.' Opp'n Br. 11.) "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). To that end, the Court concludes that the Amended Complaint fails to demonstrate that the alleged defects plausibly caused the Purchased Product to be at least unreliable for its "general purpose" of cleaning and that the Purchased Product did not "conform to the [representations] of fact made on the container or label if any." *See* N.J.S.A. 12A:2-314(2)(c), (f).

however, fail to allege that the purchased product was defective or unfit for its ordinary purpose: cleaning. *See* N.J.S.A. 12A:2-314(2)(c). To that end, the Court concludes that the Amended Complaint fails to demonstrate that the alleged defects plausibly caused the Purchased Product to be at least unreliable for its "general purpose" of cleaning. The Amended Complaint alleges that Plaintiffs read "certain representations on the label, including representations that the [Purchased] Product was 'natural[,]' 'made from plants[,]' and 'free of SLS, SLES, Parabens & Formaldehyde.'" (*See* Am. Compl. ¶ 57.) With respect to N.J.S.A. 12A:2-314(2)(f), it is not clear from the Amended Complaint what representations Plaintiffs read on the Purchased Product's labels or reviewed on Dapple's website and whether those representations conformed to the promises or affirmations of fact made on the Purchased Product's labels. Based on the lack of clarity in the Amended Complaint, the Court finds that Plaintiffs have not adequately pled a claim for breach of implied warranty. *See* N.J.S.A. 12A:2-314(2)(f). Accordingly, the Court dismisses Count Four without prejudice.

### 5. Claim for Unjust Enrichment (Count Five)

Count Five of the Amended Complaint alleges a claim for unjust enrichment. (Am. Compl. ¶¶ 111-21.) Defendants argue that Count Five should be "dismissed because New Jersey does not recognize unjust enrichment as an independent cause of action where it is duplicative of other tort-based claims." (Defs.' Moving Br. 2-3 (citing *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004)).) The Court agrees. "New Jersey does not recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (citing *Castro*, 370 N.J. Super. at 299 (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion")). "Rather, in the tort setting, 'an

unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).'" *Id.* (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)). Accordingly, because New Jersey does not recognize unjust enrichment as an independent tort cause of action, the Court dismisses Count Five with prejudice.

### 6. Common Law Fraud (Count Six)

Count Six of the Amended Complaint is a claim for common law fraud. (Am. Compl. ¶¶ 122-30.) "Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholesale Corp.*, No. 09-361, 2009 WL 2634871, at *7 (D.N.J. Aug. 26, 2009) (citing *Cox v. Sears Roebuck & Co.*, 132 N.J. 1, 17-18 (1994)). "Under New Jersey law, the elements of common law fraud are: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Va. Sur. Co. v. Macedo*, No. 08-5586, 2011 WL 1769858, at *17 (D.N.J. May 6, 2011) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005)). "As aforementioned, Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 1338199, at *9 (D.N.J. Mar. 13, 2013).

Here, Plaintiffs allege that Defendants committed fraud by purporting through "their labeling, packaging, advertising, marketing and other promotional materials that the [p]roducts were of a particular quality, when the [p]roducts were not of that quality." (Am. Compl. ¶ 123.) Plaintiffs, however, fail to allege any facts in support of Defendants' knowledge or belief of their falsity, or that Defendants intended Plaintiffs to rely on that falsity. Consequently, Plaintiffs fail to

properly plead a claim for common law fraud under New Jersey law. Accordingly, the Court dismisses Count Six without prejudice.

### 7. Negligent Misrepresentation (Count Seven)

Count Seven of the Amended Complaint alleges a claim for negligent misrepresentation. (Am. Compl. ¶¶ 131-39.) "Under New Jersey law, a claim for negligent misrepresentation requires a plaintiff to establish that defendant made an incorrect statement, upon which he or she justifiably relied, causing economic loss." *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011) (internal citations omitted). "[T]o prove a claim of negligent misrepresentation, a plaintiff must demonstrate that: (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (internal citation omitted).

Defendants argue that Count Seven should be dismissed "as a matter of law on the basis of the economic loss doctrine because Plaintiffs have alleged no bodily injury or property damage." (Defs.' Moving Br. 3.) The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). Here, Plaintiffs' allegations to support a misrepresentation fall within the fraud claims asserted in Counts Two and Six. The Court, therefore, finds that Count Seven is barred by the economic loss doctrine. Accordingly, the Court dismisses Count Seven with prejudice.

8. Claims for Injunctive and Declaratory Relief (Counts Eight and Nine)

Counts Eight and Nine of the Amended Complaint allege claims for injunctive and equitable relief. (Am. Compl. ¶¶ 140-52.) Defendants contend that these Counts are not properly pled as separate claims and, therefore, should be dismissed with prejudice. (Defs.' Moving Br. 23-26.) The Court agrees and finds that injunctive and declaratory relief are remedies—not independent causes of action. *See Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013) ("We agree . . . that an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."); *see also StrikeForce Tech., Inc. v. WhiteSky, Inc.*, No. 13-1895, 2013 WL 3508835, at *10 (D.N.J. July 11, 2013) (dismissing "injunctive relief" as an independent cause of action but explaining that the dismissal would not affect the possibility of injunctive relief as a remedy). Accordingly, the Court dismisses Counts Eight and Nine with prejudice.

## C.   **Motion to Strike**

Defendants also move to strike the class allegations in Plaintiffs' Amended Complaint. (Defs.' Mot. to Strike Br. 3, ECF No. 18-5.) Specifically, Defendants argue that Plaintiffs' proposed nationwide class should not be certified because it is overbroad and individualized fact issues destroy predominance. As Defendants' own arguments demonstrate, to strike the class allegations at this stage would be premature, and the Court's consideration of this issue is better suited for the class certification stage.

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also In re Paulsboro Derailment Cases*, No. 12-7586, 2014 WL 1371712, at *2 (D.N.J. Apr. 8, 2014) ("A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1)(a). . . . A further procedural vehicle is provided by Federal Rule of

Civil Procedure Rule 23(d)(1)(D), which provides that a 'court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'"). Motions to strike, however, are generally disfavored in this circuit at the motion to dismiss stage, and the Third Circuit has acknowledged that there are "rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011). "Similarly, numerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature." *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013) (citing *Ehrhart v. Synthes*, No. 07-1237, 2007 WL 4591276, at *3 (D.N.J. Dec. 28, 2007); *Andrews v. Home Depot U.S.A., Inc.*, No. 03-5200, 2005 WL 1490474, at *3 (D.N.J. June 23, 2005); *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *9 (D.N.J. Dec. 20, 2006)).

Given the early state of the proceedings, the Court denies Defendants' motion to strike the class allegations as premature.

### D.    Motion for Leave to Amend

The Court now turns to Plaintiffs' cross-motion for leave to amend their Amended Complaint. When filing a motion to amend, the plaintiff must attach a copy of the proposed amended complaint. *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Failing to do so is fatal for a motion to amend. *Id.* (citations omitted). A district court may deny the plaintiff an opportunity to amend his pleading "based on bad faith or dilatory motives, . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Here, Plaintiffs' cross-motion for leave to amend fails to comply with Local Civil Rule 7.1(f) as it does not include a

copy of the proposed amended complaint. Defendants argue that "any other amendment Plaintiffs might proffer will likely be futile." (Defs.' Reply Br. 12, ECF No. 24.) Leave to amend a pleading may otherwise be denied if the Court finds undue delay, bad faith on the part of the movant, undue prejudice to the non-moving party, or futility. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Notwithstanding Plaintiffs' failure to comply with Local Civil Rule 7.1(f), the Court declines to deny the motion on procedural or futility grounds. Thus, in the interest of justice, the Court will permit Plaintiffs the opportunity to amend their Amended Complaint. Accordingly, the Court grants Plaintiffs' cross-motion for leave to amend their Amended Complaint only with respect to the Counts dismissed without prejudice.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court grants Defendants' motion to dismiss in part and denies the motion in part, and grants Plaintiffs' cross-motion for leave to amend. The Court denies Defendants' motion to strike the nationwide class as premature. An Order consistent with this Memorandum Opinion will be entered by the Court.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Date:** May <u>31st</u>, 2017